

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JACK A. JOHNSON, in his capacity as
the trustee of KEY DEVELOPMENT
PENSION, f/k/a G & G Meats Pension
Fund and Columbia Meat Products
Pension Plan,

               Appellant,

      v.

CLYDE E. CARLSON and PRISCILLA
A. CARLSON, husband and wife, and
the marital community composed
thereof,

             Respondents.

No. 74240-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 13, 2017

TRICKEY, J. — Jack Johnson, in his capacity as trustee of Key Development Pension (collectively, the Pension), appeals the trial court's denial of the Pension's claim of exemption from garnishment. The Pension argues that RCW 6.15.020 and the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-461, prevent the garnishment of money representing pension benefits to plan participants, and that the trial court erred by interpreting Washington law as allowing garnishment of pension benefits. Clyde Carlson's garnishment of the Pension's assets was proper under both ERISA and Washington's garnishment law, RCW 6.15.020. Washington law does not "relate to" ERISA and the trial court's application does not conflict with ERISA and, therefore, neither are preempted. We affirm.

## FACTS

In October 2012, the Pension sued Clyde and Priscilla Carlson (together, Carlson) for defaulting on two promissory notes that Carlson had executed in 2000 and 2002. Carlson raised the affirmative defense of usury. The trial court concluded that the loans violated Washington's usury statute RCW 19.52.030 and entered judgment against the Pension for $535,087.71.

Carlson obtained a writ of garnishment on June 30, 2015, and served the writ on Washington Federal, Inc., garnishing $1,539.82 from the Pension's bank account. The Pension filed a claim of exemption on July 28, 2015, arguing that the money in the bank account was exempt from garnishment because it represented retirement funds due to the Pension's participants. The trial court denied the claim of exemption and entered judgment against the Pension as the garnishee defendant. The Pension appeals.

## ANALYSIS

Questions of law are reviewed de novo. Kommavongsa v. Haskell, 149 Wn.2d 288, 295, 67 P.3d 1068 (2003). Statutory construction is an issue of law that is reviewed de novo. Anderson v. Dussault, 181 Wn.2d 360, 368, 333 P.3d 395 (2014).

The trial court allowed Carlson to garnish the assets of the Pension, an ERISA-qualified pension benefit plan, to satisfy his judgment for usury under Washington law. The Pension contends that neither ERISA nor Washington law allowed Carlson to sue the Pension or garnish the disputed funds, and that if Washington law allows such garnishment, ERISA preempts it. Carlson argues that the garnishment was proper under both ERISA and Washington law.

2

## ERISA

ERISA provides a comprehensive federal scheme for the regulation of employee pension and welfare benefit plans. 29 U.S.C. §§ 1001-461. An employee pension plan is any plan, fund, or program established by an employer or employee organization that, by its express term or the surrounding circumstances, provides retirement income to employees or results in deferral of income by employees. 29 U.S.C. § 1002(2)(A)(i), (ii). The parties agree that the Pension is an ERISA-qualified employee pension plan.

### Claims Brought Against ERISA-Qualified Plans

*ERISA-Qualified Plans as Entities*

An employee benefit plan may "sue or be sued" under ERISA as an individual entity. 29 U.S.C. § 1132(d)(1). Any money judgment under ERISA against an employee benefit plan is enforceable only against the plan as an entity, and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under ERISA. 29 U.S.C. § 1132(d)(2).

The Pension brought a lawsuit against Carlson for enforcement of loans the Pension had made to Carlson. Carlson successfully raised the affirmative defense of usury against the Pension's lawsuit. The money judgment granted by the trial court was appropriately directed against the Pension, not the Pension's participants. Therefore, the Pension is an appropriate party to the present dispute.

*Permissible Cases and Parties in Cases against ERISA-Qualified Plans*

The Pension claims that Carlson is barred from bringing his state law claim of usury against the Pension because his cause of action does not arise under ERISA and because he is not a proper party to sue an ERISA-qualified plan. Because United States

Supreme Court case law permits his type of claim against ERISA-qualified plans, we conclude that Carlson properly brought his state law claim against the Pension.

ERISA-qualified plans may be subject to two types of civil claims. The first type of civil claim is one brought under the terms of ERISA itself by specific parties and for specific enforcement actions. Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 833, 841, 108 S. Ct. 2182, 100 L. Ed. 2d 836 (1988). Only a narrow class of parties may bring this type of claim, including plan beneficiaries, participants, and fiduciaries, the United States Secretary of Labor, a state, or an employer. 29 U.S.C. § 1132(a); Mackey, 486 U.S. at 832 (noting the restricted nature of the class of plaintiffs and permissible awards).

The second type of civil claim that may be brought against an ERISA-qualified plan is a "run-of-the-mill" state law claim, including torts committed by an ERISA-qualified plan and suits for breach of contract. Mackey, 486 U.S. at 833; see Abofreka v. Alston Tobacco Co., 288 S.C. 122, 341 S.E.2d 622 (1986) (cited favorably by Mackey as allowing tort suits against ERISA plans); see also Luxemburg v. Hotel & Restaurant Emps. & Bartends Int'l Union Pension Fund, 91 Misc. 2d 930, 398 N.Y.S.2d 589 (1977) (suit against ERISA plan for unpaid attorney fees based on breach of contract). The Supreme Court did not place any restrictions on the class of plaintiffs who may bring state law claims directly against ERISA plans. Mackey, 486 U.S. at 833.

Carlson's claim against the Pension was procedurally correct and he was a proper party to the case. Carlson's claim of usury against the Pension falls within the "run-of-the-mill" state law category of civil cases that may be brought against ERISA-qualified plans under Mackey. 486 U.S. at 833. The Pension brought a lawsuit against Carlson

for Carlson's defaulting on the Pension's loans to him. Carlson raised the affirmative defense of usury, which is a tort and contract claim under Washington law. RCW 19.52.030. The trial court found the defense meritorious and awarded penalties, costs, and reasonable attorney fees to Carlson. Therefore, Carlson's raising of the affirmative defense of usury against the Pension's suit was procedurally proper as a state law claim arising from a tort committed by an ERISA-qualified plan.

The Pension argues that Carlson is not an entity or individual qualified to bring a civil action under ERISA's provisions. Those ERISA provisions do not apply to state law claims. In sum, Carlson properly brought his state law claim of usury against the Pension. The Pension was liable for its own activities under ERISA's "sue or be sued" clause, usury is a state law claim that may be properly brought against an ERISA-qualified plan under Supreme Court case law, and Carlson is an injured party entitled to bring such a claim against the Pension. We affirm the trial court and follow the Supreme Court's decision to not place restrictions on the class of plaintiffs who may bring a state law claim against ERISA-qualified plans.

### Enforcement of Valid Judgments against ERISA-Qualified Plans

The Pension claims that, even if Carlson's suit was properly brought, the disputed funds were benefits protected from garnishment by ERISA. Carlson argues that the garnished funds were assets of the Pension and, therefore, were not protected from the enforcement of a judgment against the Pension itself. We agree with Carlson because ERISA does not exempt plan assets from garnishment under these facts.

ERISA does not provide an enforcement mechanism for collecting judgments granted against ERISA-qualified plans. Mackey, 486 U.S. at 833. Therefore, as a general

5

matter, ERISA does not disturb state law methods of collecting monetary judgments. Mackey, 486 U.S. at 834. Garnishment is a permissible method of collecting money judgments against ERISA-qualified plans. Mackey, 486 U.S. at 834.

ERISA bars, with certain exceptions, the alienation or assignment of pension benefits, including via a writ of garnishment, provided for by ERISA pension benefit plans. 29 U.S.C. § 1056(d)(1); Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 371-72, 110 S. Ct. 680, 107 L. Ed. 2d 782 (1990).

ERISA's anti-alienation provision protects only the "benefits provided," not the corpus of the fund, and plan creditors may attach plan assets to satisfy the debts of the plan itself. 29 U.S.C. § 1056(d)(1); Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan, 666 F.3d 68, 74-75 (2d. Cir. 2011); O'Toole v. Arlington Trust Co., 681 F.2d 94, 96 (1st Cir. 1982). Plan assets may be a plan's investment in another entity, along with the underlying assets of the entity, or amounts a participant or beneficiary pays to an employer or has withheld from his wages for contribution or repayment of a participant loan to the plan. 29 C.F.R. §§ 2510.3-101, 102. Plan assets become "benefits" only when they are finally distributed to the participant at the time of retirement. Milgram, 666 F.3d at 74. Prior to that point, a participant does not have a claim to any particular assets in the trust corpus. Milgram, 666 F.3d at 74; O'Toole, 681 F.2d at 96. A "sue or be sued" clause creates a presumption of susceptibility to garnishment and attachment. Mackey, 486 U.S. at 834 n.9; see 29 U.S.C. § 1132(d)(1).

Courts have stated that ERISA's anti-alienation provision does not prevent the attachment of pension assets in order to satisfy the debts of the plan itself, rather than debts of plan participants. Milgram, 666 F.3d at 75; see also Kickham Hanley P.C. v.

Kodak Ret. Income Plan, 558 F.3d 204, 214 (2d. Cir. 2009). The Second Circuit examined a case in which a plan participant of an ERISA-qualified pension plan filed suit against the plan to recover funds that were erroneously removed from his pension fund account and credited to his former wife. Milgram, 666 F.3d at 70-72. The district court permitted Milgram to garnish the pension plan's assets, rejecting the plan's argument that ERISA's anti-alienation rule precluded enforcement of the judgment. Milgram, 666 F.3d at 72. The Court of Appeals affirmed, holding that ERISA's anti-alienation provision did not prevent the garnishment of a pension plan's corpus to satisfy a valid judgment. Milgram, 666 F.3d at 76, 79.

Here, as discussed above, the Pension was individually liable for its usurious loans to Carlson. The Pension's liability rendered its assets subject to garnishment. The disputed funds were assets when they were garnished because they had not yet been distributed to the Pension's participants. Instead, they were in the Pension's bank account when Carlson garnished them.

The Pension's claim of exemption asserted that the money in the bank account represented retirement funds due to the Pension's participants. The Pension describes the funds in the Pension's bank account as "intended for distribution to plan participants," rather than distributed benefits.[1] Therefore, the garnished funds were assets of the Pension, and as such were properly used to satisfy a debt of the Pension.

### Washington State Law Enforcement Mechanisms

The Pension contends that the trial court improperly allowed Carlson to garnish pension plan benefits or assets under RCW 6.15.020. Because Washington law

---

[1] Br. of Appellant at 14.

7

specifically allows execution against employee benefit plans for valid plan obligations such as the judgment at issue here, we disagree.

Washington law broadly exempts pension plans from execution, attachment, garnishment, or seizure by or under any legal process whatsoever, with limited exceptions granted. RCW 6.15.020(2). Washington ensures "the well-being of its citizens by protecting retirement income to which they are or may become entitled." RCW 6.15.020(1). Washington law protects "[t]he right of a person to a pension, annuity, or retirement allowance or disability allowance, or death benefits, or any optional benefit, or any other right accrued or accruing to any citizen of the state of Washington under any employee benefit plan, and any fund created by such a plan or arrangement" from execution, attachment, garnishment, or seizure by or under any legal process. RCW 6.15.020(3). However, the statute permits actions against an employee benefit plan or fund for valid obligations incurred by the plan or fund for its benefit. RCW 6.15.020(3). The parties agree that the Pension is a private pension plan subject to RCW 6.15.020(3).

Here, the Pension brought an action against Carlson for his default on the loans the Pension had provided. Carlson raised the affirmative defense of usury and prevailed. As such, the Pension itself was the judgment debtor for a debt it had incurred in for its benefit. Washington courts have not previously interpreted RCW 6.15.020(3) as limiting the type of action that may be brought against a plan or the manner in which plan assets may be attached to satisfy a judgment. We decline to do so here, and affirm the trial court.

## ERISA Preemption

The parties argued below and on appeal whether ERISA explicitly preempts Washington's garnishment law or impliedly preempts the trial court's application of Washington's garnishment law to the present case.

Federal preemption is based on the supremacy clause of the United States Constitution. U.S. CONST. art. VI, cl. 2. Field preemption occurs when Congress indicates an intent to occupy a given field. Inlandboatmen's Union of the Pac. v. Dep't of Transp., 119 Wn.2d 697, 701, 836 P.2d 823 (1992). Field preemption may be explicitly expressed in the federal statute, or implied if "(1) a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it, (2) if the federal act touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or (3) if the goals sought to be obtained or the obligations imposed reveal a purpose to preclude state authority." Inlandboatmen's Union, 119 Wn.2d at 701.

Conflict preemption may occur if a state and federal law actually conflict. Inlandboatmen's Union, 119 Wn.2d at 702. Conflict preemption arises when "compliance with both [state and federal law] is physically impossible" or "when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Inlandboatmen's Union, 119 Wn.2d at 702.

There is a strong presumption against finding preemption in ambiguous cases. Inlandboatmen's Union, 119 Wn.2d at 702. "[T]he burden of proof is on the party claiming preemption." Inlandboatmen's Union, 119 Wn.2d at 702.

The Pension argues that ERISA's anti-alienation statute preempts the trial court's application of Washington law because the trial court interpreted RCW 6.15.020(3) as an exception to the broad exemption accorded to benefits from pension plans under Washington law, and thereby allowed the garnishment of funds in the Pension's bank account intended for distribution to plan participants. The Pension contends that this particular application of Washington's garnishment law conflicts with the provisions of ERISA and is thus preempted. Because the trial court properly applied Washington's garnishment law in a way that does not conflict with the provisions of ERISA, we affirm.

As discussed above, ERISA's anti-alienation provision prohibits garnishment of an employee pension benefit. 29 U.S.C. § 1056(d)(1). Plan assets are not protected under ERISA's anti-alienation provision and do not become "benefits" until they are finally distributed. Milgram, 666 F.3d at 74; O'Toole, 681 F.2d at 96. Washington law similarly allows for actions against an employee benefit plan for valid obligations incurred by the plan for the benefit of the plan or fund. RCW 6.15.020(3).

The Pension acknowledges that the trial court attached Pension assets that had not yet been distributed. The funds at issue here had not been distributed to the Pension's participants, and as such had not yet become "benefits." Therefore, the trial court's holding does not conflict with ERISA's protection of plan benefits, and instead falls within the category of permissible attachment of plan assets. We affirm the trial court's decision because its application of RCW 6.15.020(3) is consistent with ERISA and Washington law that permits actions against employee benefit plans for valid debts they incur.

## Applicability of ERISA Fiduciary Duties Section

The Pension argues in the alternative that ERISA restricts the use of plan assets to the payment of benefits and the defraying of the reasonable expenses of administering the plan, and Washington law should be read as mirroring this limitation. The Pension asserts that requiring it to pay the judgment using plan assets would not be a reasonable expense under ERISA, and any finding to the contrary should be preempted. The Pension similarly argues that RCW 6.15.020(3) should be read in conjunction with ERISA to allow only actions to collect "reasonable expenses ('valid obligations') of administrating the plan ('for the benefit of the plan')."[2]

The standard of care cited by the Pension applies only to fiduciaries of ERISA-qualified plans, not judgment creditors bringing a claim under the "sue or be sued" provision of ERISA. The fiduciary duties section of ERISA is inapplicable to the present case.

"[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). A fiduciary may only discharge his duties "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[,] and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(i), (ii).

A person becomes a fiduciary under ERISA only when performing certain defined functions, including when the person exercises discretionary authority or control over plan management or administration. Siskind v. Sperry Ret. Program, Unisys, 47 F.3d 498, 505 (2d Cir. 1995). The payment of a legal judgment is a ministerial function of the

---

[2] Br. of Appellant at 16.

fiduciary of the plan, not a discretionary one to which fiduciary liability might attach. Harris Trust & Sav. Bank v. Hancock Mut. Life Ins. Co., 302 F.3d 18, 29 (2d Cir. 2002).

The fiduciary duties section of ERISA is inapplicable to the present case. Section 1104 of ERISA governs the duties a fiduciary must discharge with respect to a plan. Carlson is not a fiduciary of the Pension, and thus he is not subject to the duties contained in section 1104. Moreover, the payment of a legal judgment incurred by the plan, such as the tort liability incurred by the Pension here, is a ministerial function of the fiduciary that is not subject to the duties under section 1104. A fiduciary of the Pension would not breach his or her duty to the Pension by paying the judgment to Carlson, as this is not a discretionary action subject to fiduciary duties. Therefore, the "reasonable expense" language of section 1104 does not act as a limiting factor on the judgment amount Carlson may seek from the Pension. Similarly, we decline to read RCW 6.15.020(3) as capping a qualifying plan's liability to an injured party under these facts.

### Attorney Fees on Appeal

Carlson requests attorney fees and costs on appeal. The underlying loan documents between the Pension and Carlson provide that the prevailing party in a collection action is entitled to an award of attorney fees and costs.

If a contract specifically provides that attorney fees and costs incurred in an action to enforce the provisions of the contract may be recovered, the prevailing party shall be entitled to reasonable attorney fees in addition to costs and necessary disbursements. RCW 4.84.330. "Where a statute authorizes fees to the prevailing party, they are available on appeal as well as in the trial court." Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 716, 9 P.3d 898 (2000).

12

Carlson is the prevailing party on appeal.  Therefore, Carlson is entitled to recover his attorney fees and costs on appeal.

We affirm.

Trickey, J

WE CONCUR: